**NATIONAL LABOR RELATIONS
BOARD, Petitioner,**

v.

**PALESTINE TELEPHONE COMPANY,
Respondent.**

No. 15807.

United States Court of Appeals
Seventh Circuit.

Feb. 13, 1967.

Marcel Mallet-Prevost, Asst. Gen.
Counsel, Janet Kohn, Atty., National La-
bor Relations Board, Washington, D. C.,
Arnold Ordman, Gen. Counsel, Dominick
L. Manoli, Assoc. Gen. Counsel, Elliott
Moore, Atty., National Labor Relations
Board, for petitioner.

Charles A. Werner, St. Louis, Mo.,
Schuchat, Cook & Werner, St. Louis, Mo.,
for intervenor.

Harry P. Dees, Joseph A. Yocum, Ar-
thur R. Donovan, Evansville, Ind., for re-
spondent, Kahn, Dees, Donovan & Kahn,
Evansville, Ind., of counsel.

Before HASTINGS, Chief Judge,
MAJOR, Senior Circuit Judge, and
CASTLE, Circuit Judge.

MAJOR, Senior Circuit Judge.

This case is here upon petition of the Board, pursuant to Sec. 10(e) of the National Labor Relations Act, as amended (29 U.S.C.A. Sec. 151 et seq.), for enforcement of two orders issued against respondent on September 20, 1965 and June 21, 1966. The Board's decisions and orders are reported at 154 NLRB No. 110 and 159 NLRB No. 79.[1]

The Board found in the first proceeding that respondent violated Sec. 8(a) (1) and (3) of the Act by transferring an employee from the bargaining unit to prevent his voting in an impending election. In the second proceeding the Board found that following such election respondent violated Sec. 8(a) (5) and (1) of the Act by refusing to bargain with the certified bargaining representative of its employees.

On September 2, 1964, Donald Mahoney, an organizer for the Union, met with three of respondent's employees, including employee Richard Maddox, who had expressed an interest in joining. All three signed cards authorizing the Union to represent them for collective bargaining. On September 11, following the Union's petition for a Board election, company and Union representatives met at the Board's office. Present were respondent's President, Postlewaite, its General Manager, Frank Kent, and Mahoney for the Union. At this meeting the parties agreed that an election would be held on September 23, with all employees eligible who were in the unit on that date and on August 31, 1964, the so-called "eligibility date." (The Board considers the "eligibility date" as the first payroll date prior to the setting of an election.)

The unit was defined in the agreement as "all construction, installation and maintenance employees * * *, excluding office clerical and professional employees * * *." The election was held as scheduled, and six employees voted. Two votes were cast for the Union, two against, and two ballots were challenged on the ground that the employees Richard Maddox and

Thomas O. Kent were not on the eligibility list provided by respondent at the pre-election conference.

Thomas O. Kent (son of the General Manager) began work on August 17, 1964. The Trial Examiner found that he was a temporary employee on the eligibility date and that in violation of Sec. 8(a) (3) of the Act respondent had made him a permanent employee so that he could vote in the election. The Board disagreed with the Examiner, found insufficient evidence that Kent's status had been changed during this period and dismissed the complaint as to him. No question is raised as to the propriety of the Board's order in this respect; therefore, no further consideration need be given to this phase of the case.

The issue before the Examiner as it related to Maddox was whether he was an office-clerical employee (inside) or a construction and maintenance employee (outside). The Examiner found that he was the former and, therefore, not entitled to vote because not a member of the involved unit. Having found in favor of respondent on this issue, the Examiner recommended that the unfair labor practice charge be dismissed.

The Board disagreed with the Examiner and found that respondent had transferred Maddox from outside to inside employment for the purpose of invalidating his vote in the election.

In doing so, the Board reasoned that Maddox was a dual-function employee from the date of his employment on September 17, 1962 until the pre-election conference on September 11, 1964. The Board reasoned, pursuant to a theory previously evolved and applied, that Maddox even though devoting less than 51% of his time to unit work had sufficient interest in the unit's condition of employment to be included, with the right to, vote. This theory was approved in N. L. R. B. v. Joclin Mfg. Co., 2 Cir., 314 F.2d 627, 632. In that case the Regional Director excluded an employee on the

---

1. On August 18, 1966, International Brotherhood of Electrical Workers, AFL- CIO, Local Union 702, was granted leave to intervene in these proceedings.

ground that he "is not primarily engaged in, and does not spend more than 50% of his time in performing duties similar to the employees in the requested unit." The Board found to the contrary, which was approved by the Court. In the case before us, respondent's records establish that from September 17, 1962 through September 14, 1964, Maddox worked 2433 hours doing outside work and 1581 hours doing clerical or inside work. It appears that during 1964 (the year of the election) Maddox worked 1339 hours in the office and only 202 hours doing maintenance or outside work.

 Respondent, citing and quoting from Indiana Rayon Corp. v. N. L. R. B., 7 Cir., 355 F.2d 535, 537, places too much reliance upon the findings and conclusion of the Trial Examiner. True, in that case we recognized that the Trial Examiner's findings as to the credibility of witnesses "may be taken into account in assessing the substantiality of the Board's supporting evidence." Even so, our function is to determine whether the findings of the Board, not those of the Trial Examiner, are supported by substantial evidence on the record as a whole. 29 U.S.C.A. Sec. 160(e).

We think no useful purpose could be served in narrating the evidence in detail. Reference to some of the more salient factors will suffice. Much of respondent's argument, as well as the reasoning of the Trial Examiner, misses the determining factor in the case, that is, the status which Maddox occupied at the time of the election. For instance, respondent quotes from the Trial Examiner, "There is much credible and probative testimony that a primary consideration when he (Maddox) was hired was an intention that he learn all facets of the telephone business and ultimately become general manager of the Company, without outside interests and reside in Palestine, the village or place where the Respondent's business was conducted." From this premise respondent argues, " * * * it would be only natural in light of the above that when the need arose he (Maddox) would step into the office on a permanent basis."

The purpose which respondent had in mind at the time of Maddox's employment, as found by the Examiner, is a factor to be considered. However, any inference drawn therefrom in favor of respondent is dispelled by its activities when confronted with the Union's demand for representation. We think the record clearly reveals that at that time an effort was made to change the status of Maddox, known to be in favor of the Union, from an outside to an inside employee. This conclusion is fortified by the fact that at the same time respondent attempted to change Thomas O. Kent (son of the General Manager) from a temporary to a permanent employee in order that he might vote against the Union.

The conference of September 11, 1964, attended by respondent's officials and a representative of the Union, was a key event. During the conference, Manager Kent learned that Maddox, whom Kent regarded as a Union supporter, would attempt to vote as a regular part-time unit employee, that is, in his capacity as an outside employee. Respondent's officials, upon inquiry, at that time were told the union scale for wages in that area. On the next working day, Kent told Maddox that he would go back into the office, "starting tomorrow." This he did, and remained there until the hearing, even though there was not sufficient office work to occupy his time. The day following Maddox's return to office work, Donald Magill, a respondent official, told him that respondent was going to fight the Union and that if Maddox were allowed to vote he would be "pivotal," as the other employees were split two to two. On the next day, Kent informed Maddox that respondent's Board of Directors had met the night before and "from now on you are an office employee."

 It is our judgment and we so hold that the record considered as a whole, including the report of the Trial Examiner, furnishes ample support for the Board's finding that respondent terminated Maddox's work in the unit in an attempt to insure that he would be ineligible to vote

in the election, thereby violating Sec. 8 (a) (1) and (3) of the Act.

Following the Board's decision, the Regional Director, acting pursuant to the agreement of September 11, overruled the challenge to Maddox's ballot. Thereupon, Maddox's ballot was opened and his vote resulted in a final tally of three votes for the Union and two against. On November 1, 1965, the Regional Director certified the Union as the exclusive representative of the involved unit.

On November 29, 1965, the Union requested of respondent a date to begin negotiations, which respondent refused with the statement, "We do not feel that you are the lawful representative of our employees, therefore, we will not meet with you." This request by the Union and respondent's refusal to bargain gives rise to the second proceeding, in which respondent was charged with a violation of Sec. 8(a) (5) and (1) of the Act.

Respondent's argument on this phase of the case appears to engender more confusion than enlightenment. It attempted in this second proceeding to attack the validity of the Union's certification, which was in conformity with the Board's decision in the first proceeding. On brief respondent states, " * * * the basis for Respondent's objection to this second proceeding was the natural prejudice of its rights resulting from the issuance of a second set of charges based on a Board order that is unenforceable under Section 10 of the Act without enforcement proceedings," and " * * * the basis for Respondent's objection to the second proceeding is the fact that the first decision was not supported by substantial evidence and would have been set aside in a properly brought enforcement proceeding."

■ This argument presumably is based on the theory that the Board's decision in the first proceeding was not final because it did not petition for enforcement. If so, it is without merit. Respondent could also have petitioned to have the order set aside. The fact that neither the Board nor respondent took action in this respect does not impair the validity of the Board's order. Necessarily, it had to be a final order before either party could have sought court relief.

■ In our view, respondent was not entitled in the second proceeding to be heard on the same issues which had been raised and decided by the Board in the first proceeding. If respondent was aggrieved by the order of the Board in the first proceeding, it had the right under Sec. 10(f) to petition a court to set it aside. Instead, it sought in the second proceeding to nullify the Board's order in the first proceeding.

■ In any event, the Regional Director appears to have acted in conformity with the provisions of the written agreement entered into and signed by the parties on September 11, 1964. It has often been held that such an agreement is binding upon the parties absent a showing, which was not made here, that the Regional Director acted arbitrarily and capriciously. N. L. R. B. v. Parkhurst Mfg. Co., Inc., 8 Cir., 317 F.2d 513, 517; Diversey Corp. v. N. L. R. B., 7 Cir., 325 F.2d 489, 490; N. L. R. B. v. Jas. H. Matthews & Co., 3 Cir., 342 F.2d 129, 131.

The Board's petition for enforcement of its orders is allowed as requested.