**LOCAL No. P–1236, AMALGAMATED MEAT CUTTERS & BUTCHER WORKMEN of NORTH AMERICA, AFL–CIO, Plaintiff,**

v.

**JONES DAIRY FARM, Defendant.**

No. 79–C–377.

United States District Court, W. D. Wisconsin.

Aug. 17, 1981.

Kenneth Loebel, Habush, Habush & Davis, Milwaukee, Wis., for plaintiff.

Herbert P. Wiedemann, Foley & Lardner, Milwaukee, Wis., for defendant.

## ORDER

CRABB, Chief Judge.

Local No. P–1236, Amalgamated Meat Cutters & Butcher Workmen of North America, AFL–CIO, asks this court to vacate an arbitrator's award which upheld the right of defendant, Jones Dairy Farm, to promulgate and enforce a rule prohibiting its employees from dealing directly with inspectors from the United States Department of Agriculture. Additionally, plaintiff asks that defendant be enjoined from enforcing the rule, and seeks $25,000 in damages. Jurisdiction is alleged under § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185; 28 U.S.C. § 1337; the Meat Inspection Act, 21 U.S.C. § 601 *et seq.*; and the First Amendment to the United States Constitution. This action is now before the court on plaintiff's motion for summary judgment.

From the pleadings, affidavits, and exhibits submitted by the parties to this suit and for the purpose of deciding the motion, I find that there is no genuine issue with respect to any of the matters set forth under the heading "Facts."

## FACTS

Plaintiff is a labor organization and is the bargaining representative of some of defendant's employees. Accordingly, plaintiff represents employees in an industry affecting commerce within the meaning of 29 U.S.C. § 185. Defendant is a Wisconsin corporation engaged in the processing and sale of foods in interstate commerce. Accordingly, defendant is an employer in an industry affecting commerce within the meaning of 29 U.S.C. § 185. Defendant also is subject to federal regulations under the Meat Inspection Act, 21 U.S.C. § 601 *et seq.*

Plaintiff and defendant have had a bargaining relationship since the latter part of 1966. They are parties to a collective bargaining agreement which, among other things, contains the following clauses:

Article V—Management

1. The management of the plant and the direction of working forces are vested exclusively in the Company, including but not limited to the rights to hire, discipline, or discharge for proper cause. . . .

. . . .

The Company will furnish the Union with a copy of any new rules before they are put into effect.

. . . .

Article XIII—Adjustment of Grievances

. . . .

5. The sole function of the arbitrator shall be to determine whether or not the rights of an employee, as set forth in the Agreement, have been violated by the Company. The arbitrator shall have no authority to add to, subtract from or modify this agreement in any way.

On May 11, 1978, William Roberts, an employee of defendant who also is president of plaintiff union, observed grease and rust-colored material on a cutting board at defendant's plant. Roberts reported what he had seen to an inspector of the United States Department of Agriculture. Roberts had reported unsanitary conditions to

USDA inspectors in the past, and management had never informed him that in so reporting to USDA inspectors he was violating a company rule or policy. Nevertheless, by way of disciplinary action defendant sent Roberts a letter dated May 16, 1978, in which Roberts is reprimanded for "willfully by-passing your supervisor, and instead, reporting an alleged potential plant problem to a USDA inspector." The letter continues:

> This letter of reprimand is *not* for talking to a USDA inspector but for neglect of your responsibility in not reporting an alleged or potential problem condition to your supervisor to whom you are responsible.

> In the future, any neglect of your responsibility in this regard or your by-passing of your direct supervisor will result in more severe disciplinary action.

On August 22, 1978, defendant posted a notice dated August 18, 1978, of the following rule:

> "Employees must deal through supervision or designated plant management rather than directly with U.S.D.A. government inspectors."

> Any deviation from this rule will result in appropriate disciplinary action. The first offense will be a written warning.

> This does not preclude responses to proper questions, social exchanges, common courtesies, or carrying out properly delegated responsibilities or procedures.

The following reasons for the rule were expressed in the notice:

> It has long been the company's policy that employees must deal through supervision or designated plant management rather than directly with U.S.D.A. government inspectors in reporting real or alleged deficiencies, deviations, violations, or other plant problems.

> There are very sound reasons for this policy. By regulation there must be a company designated individual in each department or area who is responsible for the sanitation program and compliance with regulations. The company must inspect the department and allow operations to be performed only when all requirements are attained. Plant management is responsible for training plant employees in proper procedures and compliance. Plant management through it's [sic] supervisors must actually guarantee to strictly conform to all Federal regulations. Plant management is responsible for producing wholesome products in a clean plant, utilizing hygenic procedures. It follows that supervisory awareness and following the "chain of command" can expedite solution of the problem, prevent disorder and misunderstanding, and thus minimize any interference with production. The supervisor is the person responsible for corrective action when a deficiency occurs.

Plaintiff complained to the National Labor Relations Board both about the disciplinary action taken by defendant with respect to Roberts and about this rule, which applies to employees' non-working as well as working hours, and which defendant promulgated unilaterally without negotiating with the union. The Board's General Counsel issued a complaint alleging that when defendant disciplined Roberts, defendant violated § 8(a)(1), (3) and (4) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (3) and (4). The parties subsequently negotiated a settlement on this issue, pursuant to which defendant revoked the reprimand to Roberts while denying any violation of the Act. With respect to plaintiff's challenge to the validity of the rule itself, the Board's General Counsel dismissed plaintiff's charges on the following ground:

> [I]t does not appear that the rule, as posted by the Employer, constitutes a violation of employee rights under Section 7 of the Act even though it restricts employees from reporting product sanitation or related problems to agents of a Federal regulatory body. Rather, it appears that the duties and responsibilities of the USDA inspectors are strictly product-oriented (i. e. to insure that USDA standards are followed in the processing of meat) and that the type of complaints taken to the inspectors in the past, by

employees, were again product-oriented and did not directly concern safety, working conditions or other terms or conditions of employment. Contrasting the role of the USDA with that of other Government agencies such as OSHA and EEOC, whose primary function is to protect employee rights, it appears that the USDA's relation to Section 7 rights is too remote to warrant a conclusion that employee access to USDA inspectors should be covered by the Act.

Plaintiff also challenged the validity of the rule via the grievance procedure established by the collective bargaining agreement. The grievance was pursued to arbitration and on May 21, 1979, the arbitrator issued his award. The arbitrator framed the question as "Did the Company violate the [collective bargaining] contract by establishing a rule which prohibits employees from reporting or dealing directly with U.S. D.A. inspectors?" The arbitrator answered the question in the negative, finding that the rule is neither arbitrary nor unreasonable nor overbroad. Additionally, the arbitrator rejected arguments that the rule is against public policy and that it violates the First Amendment.

Previously, the National Labor Relations Board had held that defendant acted unlawfully in July, 1976, when defendant discharged employee Michael Krebs because Krebs, who was chief steward and a safety committeeman, informed a second employee that he believed it was unsafe to enter a work area into which ammonia had leaked and that the second employee therefore had the right to refuse to enter the area. The Board further held that in December, 1976, a supervisor to whom Krebs (by then reinstated) brought another safety complaint unlawfully threatened Krebs with reprisals for pursuing the complaint, this time involving a slicing machine which would not disconnect. Defendant was ordered to make Krebs whole for any loss he suffered and to expunge from his personnel file any reference to the discharge.[1]

Plaintiff filed this complaint on August 17, 1979. Defendant was served with the summons and complaint on August 30, 1979.[2]

## OPINION

### Jurisdiction

Plaintiff has alleged that this court has jurisdiction to hear this dispute under § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185; 28 U.S.C. § 1337; the Meat Inspection Act, 21 U.S.C. § 601 *et seq.*; and the First Amendment to the United States Constitution. However, the allegations of the complaint do not easily bring all of plaintiff's claims within the scope of the cited jurisdictional provisions, and it is therefore appropriate to begin the analysis of this case by considering whether this court has the power to adjudicate it.

■ Section 301 of the Labor-Management Relations Act empowers the federal

---

1. The facts concerning the July, 1976, and December, 1976, incidents involving employee Krebs are taken from the National Labor Relations Board's decision in *Jones Dairy Farm*, 245 NLRB No. 143, September 28, 1979, a copy of which is attached to William Roberts' affidavit in support of plaintiff's motion for summary judgment. Although defendant disputes some of the conclusions drawn by plaintiff from that decision, none of the specific facts taken from it were contested by defendant. Indeed, in the context of this proceeding the factual findings of the Board in *Jones Dairy Farm* are conclusive, *N.L.R.B. v. Palestine Telephone Company*, 372 F.2d 937 (7th Cir. 1967), and in its proposed findings of fact, defendant acknowledges the propriety of utilizing the Board's decision in this manner.

2. There is no indication in the record that defendant was served with notice of this action within three months of the time the award was filed or delivered, as required by Wis. Stat. § 788.13. Accordingly, it may be that this action is untimely. *See Davidson v. Roadway Express, Inc.*, 650 F.2d 902 (7th Cir., 1981); *Intern. Union, United Auto., Aerospace & Agricultural Implement Workers v. LaCrosse Cooler Co.*, 406 F.Supp. 1213 (W.D.Wis.1976). However, defendant has not pleaded untimeliness as an affirmative defense, and a failure to specially plead a statute of limitations in an answer constitutes a waiver of that defense. Wis. Stat. § 893.01; *Mead v. Ringling*, 266 Wis. 523, 64 N.W.2d 222 (1954), *rehearing denied and amended*, 266 Wis. 523, 65 N.W.2d 35 (1954).

courts to hear "suits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). Plaintiff has not expressly predicated its claims before this court on an alleged violation of the collective bargaining agreement.[3] Rather, plaintiff argues primarily that the rule promulgated by defendant and the arbitrator's award should be invalidated for reasons extrinsic to that agreement; that is, for reasons having to do with public policy and the First Amendment. Nevertheless, because plaintiff invokes jurisdiction under § 301 and because the underlying claim was presented to the arbitrator in terms of an alleged violation of the collective bargaining agreement, the complaint can be construed to make the following claim: that the challenged rule is in derogation of important public policies, and that promulgation of such a rule violates the collective bargaining agreement either because it is not within the scope of the management clause which empowers defendant to discipline employees for "proper cause" or because, to the extent that it is permitted by the agreement, the agreement is void. Construing the complaint in this manner, I find that this court does have jurisdiction pursuant to § 301.

Plaintiff appears to rely on the First Amendment itself as the jurisdictional basis for claims that the arbitration award and the rule violate constitutional guarantees of freedom of speech and association, and the right to petition the government. Although the complaint omits any reference to 28 U.S.C. § 1331, the statute which allows district courts to hear such claims, the omission is not fatal, and I find that the court does have jurisdiction over these claims. *Southpark Square Ltd. v. City of Jackson, Miss.*, 565 F.2d 338 (5th Cir. 1977), *cert. denied*, 436 U.S. 946, 98 S.Ct. 2849, 56 L.Ed.2d 787 (1978); and *see Schlesinger v. Councilman*, 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975).[4]

### Validity of the Arbitration Award

The arbitration award upheld defendant's right to establish and enforce the challenged rule. The arbitrator found that promulgation of the rule was not a violation of the collective bargaining agreement; that the rule was not unreasonable, arbitrary, or overbroad; that the rule is not contrary to public policy; and that the rule does not violate the First Amendment.

Plaintiff claims that the award should be vacated as contrary to public policy and as violative of the First Amendment. In evaluating the validity of plaintiff's claims, two questions must be addressed: 1) whether an arbitration award may be vacated because it conflicts with public policy or the Constitution; and 2) whether this award conflicts with public policy or the Constitution.

**3.** Plaintiff does argue, at page 16 of its brief in support of its motion for summary judgment that

In substance, the Union's position is that the rule is so overbroad and contrary to public policy that its enforcement by the Employer against any employee would be inconsistent with the "proper cause" contractual standard that limits the Employer in its imposition of discipline under the labor contract.

However, in its complaint plaintiff does not directly allege that the rule constitutes a breach of the collective bargaining agreement, and such a theory is not emphasized in plaintiff's arguments.

**4.** In addition to the jurisdictional grounds discussed in the text of this opinion, plaintiff also has alleged jurisdiction under the Meat Inspection Act, 21 U.S.C. § 601 *et seq.*, together with 28 U.S.C. § 1337. In order for jurisdiction to exist under these statutes, plaintiff's claims

must "arise under" federal law. The court of appeals for this circuit has indicated that this term is not to be given a narrow construction: "The fact that federal law does not create the cause of action...does not necessarily mean that the case does not 'arise under' federal law...." *American Invs.-Co. Countryside v. Riverdale Bank*, 596 F.2d 211 (7th Cir. 1979). Nevertheless, it is problematic whether plaintiff's claims can be characterized as arising under the Meat Inspection Act. Moreover, unless the claims can be characterized not only as *arising under* but also as *created by* that Act, *U.S. Bulk Carriers v. Arguelles*, 400 U.S. 351, 91 S.Ct. 409, 27 L.Ed.2d 456 (1971), cited by plaintiff in support of the allegation of jurisdiction under the Act, is inapposite. Because I have found that jurisdiction is present under other statutes, it is not necessary that these questions be answered.

*Permissibility of Vacating an Arbitration Award on the Grounds of Conflict with Public Policy or the Constitution*

■ When a court is asked to review a labor arbitration award the general principle of deference to the arbitration process must weigh heavily. This principle was stated by the Supreme Court in *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960) as follows:

> The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards.

However, in that same case, the Court admonished that an arbitrator's power is not unqualified, and that an award is not immune from judicial review.

> [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

*Id.* at 597, 80 S.Ct. at 1361.

In a subsequent case the Court further explicated the limited scope of an arbitrator's authority. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

> As the proctor of the bargain, the arbitrator's task is to effectuate the intent of the parties. His source of authority is the collective-bargaining agreement, and he must interpret and apply that agreement in accordance with the "industrial common law of the shop" and the various needs and desires of the parties. *The arbitrator, however, has no general authority to invoke public laws that conflict* with the bargain between the parties... [T]he arbitrator has authority to resolve only questions of contractual rights....

*Id.* at 53–54, 94 S.Ct. at 1022 (emphasis added). The Court concluded:

> Parties usually choose an arbitrator because they trust his knowledge and judgment concerning the demands and norms of industrial relations. On the other hand, *the resolution of statutory or constitutional issues is a primary responsibility of the courts....*

*Id.* at 56–57, 94 S.Ct. at 1023–1024 (emphasis added).

■ In light of these cases, it is clear that an arbitrator's sole authority is to construe and apply the collective bargaining agreement; his or her sole responsibility is to the parties to that agreement. Put another way, the arbitrator lacks the power, and perhaps also the expertise, to rule on questions of federal law as they affect labor relations, and to consider the interests of those who are not parties to the collective bargaining agreement. With respect to these questions and interests, then, deference to the arbitral process is not appropriate.

Consistent with these limits on arbitral power, a number of lower courts have vacated or refused to enforce arbitration awards because the award conflicted with public policy. *See, e. g., General Warehousemen & Helpers v. Standard Brands*, 579 F.2d 1282 (5th Cir. 1978) *cert. denied*, 441 U.S. 957, 99 S.Ct. 2420, 60 L.Ed.2d 1075, 443 U.S. 913, 99 S.Ct. 3103, 61 L.Ed.2d 877 (1979) (affirming district court's refusal to enforce an arbitration award where the award required the defendant employer to benefit one group of employees in a way that would violate the terms of a separate collective bargaining agreement which the employer had entered into with a second group of employees); *Glendale Manufacturing Co. v. Local No. 520*, 283 F.2d 936 (4th Cir. 1960) *cert. denied*, 366 U.S. 950, 81 S.Ct. 1902, 6 L.Ed.2d 1243 (1961) (holding unenforceable an arbitration award which required an employer to negotiate with a union which at the time of the enforcement

action no longer represented the employees, having been decertified one week after the award issued); *Local Union 249 v. Consolidated Freightways,* 464 F.Supp. 346 (W.D. Pa.1979) (vacating as contrary to the public policy of Pennsylvania grievance awards which upheld the right of an employer to require employees to drive vehicles which did not fully comply with Pennsylvania's Vehicle Code); *General Telephone Co. v. Locals 1635, 1636, 1637,* 427 F.Supp. 398 (W.D.Pa.1977) (vacating as in manifest disregard of the law an arbitration award which held unlawful and therefore unenforceable a provision in the collective bargaining agreement which denied sick pay benefits for absence due to pregnancy, and suggesting that the arbitrator exceeded his powers when he went outside the agreement to determine the legality of the challenged provision); *Botany Inds., Inc. v. New York Joint Bd., Amalgamated Clothing Workers,* 375 F.Supp. 485 (S.D.N.Y. 1974) *vacated as moot sub nom. Robb v. New York Joint Bd. Amalgamated Clothing Workers,* 506 F.2d 1246 (2d Cir. 1974) (vacating an arbitration award on the ground that the terms of the collective bargaining agreement which the arbitrator sought to enforce violated federal labor laws); and *see Local 453 v. Otis Elevator Co.,* 314 F.2d 25 (2d Cir. 1963) *cert. denied,* 373 U.S. 949, 83 S.Ct. 1680, 10 L.Ed.2d 705 (1963). In *Otis Elevator,* a seminal case in this area of law, the court stated the rationale for entertaining public policy challenges to arbitration awards:

> It is no less true in suits brought under § 301 to enforce arbitration awards than in other lawsuits that the "power of the federal courts to enforce the terms of private agreements is at all times exercised subject to the restrictions and limitations of the public policy of the United States. * * *" *Hurd v. Hodge,* 334 U.S. 24, 34–35, 68 S.Ct. 847, 852–853, 92 L.Ed. 1187 (1948). The public policy to be enforced is a part of the substantive princi-

ples of federal labor law which federal courts, under the mandate of *Textile Workers Union of America v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), are empowered to fashion. *Cf. Local 174, Teamsters, etc., v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962). Thus, when public policy is sought to be interposed as a bar to enforcement of an arbitration award, a court must evaluate its asserted content. *Id.* at 29.

■ Having considered carefully the words of the Supreme Court in the *Steelworkers' Trilogy*[5] and *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), I conclude, as did the other lower courts cited above, that public policy is a proper basis on which to vacate or refuse to enforce an arbitration award. Review of an award on this ground can be reconciled with the general principle of judicial deference to the arbitral forum, since a public policy challenge does not attack the validity of that part of the arbitrator's decision which the arbitrator properly was empowered to render. That is, the arbitrator's construction of the underlying *collective bargaining agreement* must be accepted, but it is for a court to decide whether the resulting *award* is unlawful or so contrary to important public policy that it must be vacated or denied enforcement.

The court of appeals for this circuit has not yet ruled on this question. In one case in which it was faced with a public policy challenge to an arbitration award, that court found that no federal or state policy was violated by the challenged arbitration award. *International Ass'n of Machinists, Dist. No. 8 v. Campbell Soup Co.,* 406 F.2d 1223 (7th Cir. 1969) *cert. denied,* 396 U.S. 820, 90 S.Ct. 57, 24 L.Ed.2d 70 (1969). Having made this finding, the court did not directly address the question whether an award could ever be vacated as violative of public policy. Nevertheless, the fact that it

---

5. *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

seriously addressed the public policy claims suggests that the court considers public policy to be a legitimate basis on which to vacate an award.

*Consistency of this Award with Public Policy and the Constitution*

Plaintiff contends that the challenged rule chills the employees' rights under the First Amendment. However, the First Amendment is a limitation on the power of the state; it does not apply to private conduct. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974).

Plaintiff argues that defendant and the United States government are perceived by the public, and therefore should be treated by this court, as working jointly in the processing of meat. In support of this argument plaintiff notes that federal inspectors have access to defendant's premises and that the government places a "seal of approval" on defendant's meat products. However, I find that these links between the government and defendant are not sufficient to render defendant's actions subject to the constraints of the First Amendment.

Moreover, the fact that a business is subject to extensive and detailed regulation does not convert its action into that of the state. *Jackson*, 419 U.S. at 350, 95 S.Ct. at 453. The court of appeals for this circuit has stated:

> Unless it is alleged that the regulatory agency has encouraged the practice in question, or at least given its affirmative approval to the practice, the fact that a business or an institution is subject to regulation is not of decisive importance.

*Cohen v. Illinois Inst. of Technology*, 524 F.2d 818, 826 (7th Cir. 1975), *cert. denied*, 425 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 187. Plaintiff has made no allegation that the USDA encouraged or approved of defendant's rule; indeed, any such allegation would undermine plaintiff's claim that the rule jeopardizes the public health by hindering the USDA inspectors in their work.

Plaintiff cites *Holodnak v. Avco Corp.*, 514 F.2d 285 (2d Cir. 1975) *cert. denied*, 423 U.S. 892, 96 S.Ct. 188, 46 L.Ed.2d 123 (1975) in support of its First Amendment claim. However, *Holodnak* is clearly distinguishable from this case in terms of the extent of governmental involvement with the employer. In *Holodnak* a large proportion of the work done at the employer's plant was performed under contracts with the United States Department of Defense, the Army, the Navy, and the Air Force; the employer's plant and the 77 acres on which it was built were owned by the United States, as was most of the machinery and equipment, for all of which the employer paid no rent. Under these circumstances it is not surprising that the court found a symbiotic relationship to exist between the employer and the government. Here, there are no such circumstances and no such relationship.

In addition to its First Amendment claim, plaintiff also claims that the rule and the arbitration award upholding the rule conflict with the public policy expressed in the Meat Inspection Act, 21 U.S.C. § 601 *et seq.* That Act includes the following statement of Congressional findings:

> It is essential in the public interest that the health and welfare of consumers be protected by assuring that meat and meat food products distributed to them are wholesome, not adulterated, and properly marked, labeled, and packaged. Unwholesome, adulterated, or misbranded meat or meat food products impair the effective regulation of meat and meat food products in interstate or foreign commerce, are injurious to the public welfare, destroy markets for wholesome, not adulterated, and properly labeled and packaged meat and meat food products, and result in sundry losses to livestock producers and processors of meat and meat food products, as well as injury to consumers.

21 U.S.C. § 602.[6]

The gist of plaintiff's argument is that the purpose and effect of the challenged

---

**6.** The Act provides for the inspection and regulation of slaughtering and packing establish-ments, and for the rejection of adulterated meat products as follows:

rule are to discourage employees from reporting the existence of unsanitary or unwholesome conditions to anyone who is in a position to correct the problem: to supervisors, because of the risk of being branded a troublemaker and penalized in subtle or not-so-subtle ways; to USDA inspectors, because of the risk of being disciplined for violating defendant's rule. Plaintiff contends that the failure of the employees to report such conditions will jeopardize the public's interest in wholesome meat products which the Meat Inspection Act is intended to protect.

There is no merit to plaintiff's argument that it is a violation of public policy to require employees to report problem conditions to supervisors. To the contrary, it is in the public's interest that problems identified by line workers be brought to the attention of those who are responsible for remedying them.[7] As defendant accurately stated in its notice of the rule:

> Plant management is responsible for producing wholesome products in a clean plant, utilizing hygenic procedures. It follows that supervisory awareness and following the "chain of command" can expedite solution of the problem, prevent disorder and misunderstanding, and thus minimize any interference with production.

There is nothing in the rule itself to suggest that defendant promulgated it in

> The Secretary shall cause to be made, by experts in sanitation or by other competent inspectors, such inspection of all slaughtering, meat canning, salting, packing, rendering, or similar establishments in which cattle, sheep, swine, goats, horses, mules, and other equines are slaughtered and the meat and meat food products thereof are prepared for commerce as may be necessary to inform himself concerning the sanitary conditions of the same, and to prescribe the rules and regulations of sanitation under which such establishments shall be maintained; and where the sanitary conditions of any such establishment are such that the meat or meat food products are rendered adulterated, he shall refuse to allow said meat or meat food products to be labeled, marked, stamped, or tagged as "inspected and passed."

21 U.S.C. § 608.

order to identify and penalize employees who complain about unsanitary conditions. Nevertheless, plaintiff argues that the potential for such abuse exists, and that employees will neglect to report problem conditions for fear of retaliation; fear which plaintiff contends is reasonable in light of the incidents in July and December of 1976, in which defendant unlawfully discharged and threatened an employee who complained about the safety of working conditions. I agree with plaintiff that these incidents are significant, but the significance I attach to them is different from that argued by plaintiff. The ultimate outcome of those incidents was a finding by the National Labor Relations Board that defendant had engaged in unfair labor practices, and the employee injured by defendant's conduct was made whole. This suggests that there already exists an adequate process by which employees can be compensated if they are arbitrarily penalized by defendant for reporting unsanitary conditions to their supervisors, in compliance with the stated policy behind the rule.

While I reject plaintiff's arguments concerning the requirement that employees report unsanitary conditions to their supervisors, I find nevertheless that the rule is contrary to public policy. The fatal defect in the rule is the absolute nature of its prohibition:

7. Plaintiff cites *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978) in support of its contention that employees are justifiably reluctant to make complaints about or be identified as witnesses against their employer because of the "intense leverage" to which they then may be subjected. However, *Robbins Tire* and this case differ in a critical respect. *Robbins Tire* involved the identification of employee witnesses in the context of unfair labor practice proceedings; that is, at a time when the employees and employer already were in an adversarial relationship. Everyday employee-employer relations are not analogous to those that exist during such a proceeding. The requirement that line workers report problem conditions to their supervisors does not render them adversaries. Rather, it makes the workers and management part of a joint effort aimed at running a sanitary and efficient operation.

"Employees must deal through supervision or designated plant management rather than directly with U.S.D.A. government inspectors."

Any deviation from this rule will result in appropriate disciplinary action. The first offense will be a written warning.

Thus, employees may not directly contact USDA inspectors without jeopardizing their employment even if a serious problem remains uncorrected for an unreasonably long period of time after management has been informed of it. It is questionable whether it is fair to ask an employee to bear the personal cost resulting from a violation of the rule in order to benefit the public. Even more questionable, however, is the reasonableness of expecting that an employee will bear that cost.[8] And, if in the face of a continuing, serious problem which management knowingly fails to remedy, an employee chooses not to take the personal risk involved in violating the rule, it is the consuming public that will suffer.

In sum, I find that because of its scope the rule is so contrary to public policy as to require that the arbitration award upholding it be vacated.

### Validity of the Rule

■ Having found the rule to be contrary to public policy so as to require vacation of the award, it is appropriate additionally to grant plaintiff's request that defendant be enjoined from enforcing the rule. Promulgation of such a rule is a violation of the collective bargaining agreement because, to the extent that the agreement can be read to permit the rule, the agreement is void. The obligation of courts to revise collective bargaining agreements in this fashion has been described as follows:

[I]n making collective agreements, as in making other contracts, the parties are not completely free to make any agreement they wish. Free collective bargaining, like liberty of contract, is not an

absolute; the parties' mutual desires may be defeated, trimmed, or shaped by overriding policies. . . . [C]ollective agreements, because they are intimately affected by statutory provisions and policies, are more subject than most contracts to external restraints and guidance. Indeed, the presence of the statute and the public function of collective bargaining place on the courts an exceptionally heavy responsibility to decide when and how to impose restraints on the parties' agreements in order to give effect to the statutes' multiple policies, including the statutory policy of freedom of contract. Difficult as this task may be, the courts have no choice. To the famous statement, "Public policy is an unruly horse and dangerous to ride," Professor Corbin gave the unanswerable reply, "However unruly the horse may be, it is not possible for the courts to refuse to ride." We may criticize the courts for their horsemanship, but not for riding the horse on which contract principles place them.

Summers, *Collective Agreements and the Law of Contracts*, 78 Yale L.J. 525, 556–7, (1969) (footnotes omitted).

Federal courts have considerable latitude in fashioning remedies under § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185. As the Supreme Court noted in *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 457, 77 S.Ct. 912, 918, 1 L.Ed.2d 972, "the range of judicial inventiveness will be determined by the nature of the problem." Here, the problem is that it is not adequate merely to vacate the arbitrator's award since mere vacation may leave defendant's employees uncertain about the current status of the rule; any doubts the employees have about the enforceability of the rule may cause them to refrain from reporting even serious problems to USDA inspectors. To the extent that employees choose not to report because of these doubts, the harm they will have suffered by improperly being forced to choose between self-interest and

---

**8.** It is equally unlikely that the union will bargain for the right of its members to report unhealthful conditions to representatives of the USDA, when such a clause probably could be obtained only at the cost of compromising on some other demand which might benefit the employees more directly.

the interests of the public will be irreparable and incapable of compensation, as may be the harm to the consuming public. Accordingly, the traditional requirements for equitable relief are satisfied. *Adamszewski v. Local Lodge 1487, Int'l Ass'n of Machinists & Aerospace Wkrs.*, 496 F.2d 777 (7th Cir. 1974) *cert. denied*, 419 U.S. 997, 95 S.Ct. 311, 42 L.Ed.2d 271 (injunctive relief appropriate where a party has no adequate remedy at law and will suffer irreparable harm unless an injunction issues).

### ORDER

IT IS ORDERED that plaintiff's motion for summary judgment is GRANTED. The arbitration award issued in *Jones Dairy Farm v. Local No. P–1236, Amal. Meat Cutters & Butcher Workmen* (May 21, 1979) (Maslanka, Arb.) is VACATED, and defendant Jones Dairy Farm is permanently enjoined from enforcing the rule promulgated in August, 1978, which provides that "employees must deal through supervision or designated plant management rather than directly with U.S.D.A. government inspectors."