**LOCAL P–40, UNITED FOOD & COMMERCIAL WORKERS INTERNATIONAL UNION, Plaintiff,**

v.

**PATRICK CUDAHY, INC., Defendant.**

Civ. A. No. 83–C–508.

United States District Court,
E.D. Wisconsin.

Dec. 14, 1983.

Daniel L. Shneidman, Milwaukee, Wis., for plaintiff.

Max L. Lieberman, Philadelphia, Pa., and Thomas P. Krukowski, Milwaukee, Wis., for defendant.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is an action to vacate the award of an arbitrator in a labor dispute. The court's jurisdiction derives from 29 U.S.C. § 185. The plaintiff union alleges that the arbitrator erred procedurally by refusing to permit a discharged employee to attend an on-site inspection of the area where the incident giving rise to the dispute occurred. Plaintiff also alleges that the arbitrator made erroneous rulings of law, and was the victim of the defendant company's fraudulent devices. Defendant and plaintiff have both moved for summary judgment. Additionally, defendant seeks an award of attorney fees. Plaintiff views this motion as frivolous and vexatious, and moves the court for an award of attorney's

fees incurred in opposing defendant's motion for attorney fees. Defendant's motion for summary judgment is granted; plaintiff's motion is denied. No attorney's fees will be awarded.

The facts are not in dispute. In September, 1981, Mr. Johnnie Scott, an employee of the defendant and a member of the plaintiff union, stopped the hog-cutting production line at defendant's plant. When approached by a supervisor and queried why he had stopped the line, Mr. Scott responded with an expletive that will not be repeated here. It was not clear whether the profanity was directed at the supervisor or was a mere expression of unfocussed rage. Nonetheless, the supervisor took offense, and Mr. Scott was discharged shortly thereafter.

Pursuant to the procedure established in its collective bargaining agreement with the defendant, the plaintiff brought a grievance before an arbitrator, challenging the discharge of Mr. Scott. Scott also filed a claim for unemployment compensation benefits with the Wisconsin Department of Industry, Labor & Human Relations ("DILHR"). The DILHR found that Mr. Scott's decision to stop the production line stemmed from his concern for a co-worker's safety. Accordingly, Mr. Scott was awarded unemployment compensation. The defendant unsuccessfully appealed this decision to the Labor and Industry Review Commission. Thereafter, defendant sought judicial review in state court, but this effort was untimely, and the defendant ultimately withdrew its appeal. Arbitration was pending in the meantime, and the arbitrator was apprised of these events.

At an arbitration session hearing on September 29, 1982, the parties discussed a re-enactment of the events of September 16, 1981. It was agreed that the parties, by their representatives and counsel, would accompany the arbitrator in an on-site inspection the following day. Plaintiff's counsel requested that Mr. Scott and his former co-worker be permitted to re-enact their activities giving rise to the work stoppage. Defendant objected, refusing to permit Mr. Scott to return to the work place. The arbitrator decided that Mr. Scott should not be allowed in the work place, and the on-site inspection took place without him. His former co-worker, however, was present. Apparently the defendant had reorganized the work area in the year following Mr. Scott's discharge, although the union did not attempt to introduce evidence of the altered conditions in a subsequent arbitration hearing.

After the hearings were completed, the parties submitted post-hearing briefs, and on January 11, 1983, the arbitrator issued his award denying the grievance. The arbitrator's decision was based on the testimony and evidence adduced at the hearing; he found the DILHR proceeding to be "of little or no consequence." The arbitrator elected not to believe Mr. Scott's proffered safety excuse for stopping the line, choosing instead to believe the defendant's account of the incident: that Mr. Scott stopped the line because he was upset about a co-worker's decision not to give him a bathroom break. The arbitrator also concluded that the expletive uttered by Mr. Scott was directed at his supervisor, and thus constituted an act of insubordination. The arbitrator thought that this insubordinate verbal assault would have provided sufficient grounds for discharge. However, the arbitrator also looked to Mr. Scott's past record, which he found to be quite poor. The arbitrator concluded that the defendant had just cause for discharging Mr. Scott.

In this action, plaintiff offers several grounds for setting aside the award:

1) The arbitrator exceeded his contractual authority by refusing to permit Mr. Scott to re-enter the workplace and re-enact the incident;

2) The arbitrator improperly substituted his judgment for that of the parties when he indicated that Mr. Scott's insubordinate act was sufficient grounds for discharge;

3) The arbitrator erred by refusing to adopt findings made in the DILHR proceeding;

4) The arbitrator was misled by fraudulent statements of the defendant;

5) The arbitrator improperly ignored the disparate treatment of Mr. Scott; and

6) The arbitrator's award is contrary to public policy.

These arguments are dispensed with *seriatim.*

■■■ At the outset, I observe that my function in this case is tightly circumscribed. It is firmly established that the scope of my inquiry is confined to two narrow questions, to wit: 1) "whether the award 'draws its essence from the collective bargaining agreement;'" and 2) "whether 'the arbitrator's words manifest an infidelity to this obligation.'" *Amoco Oil Co. v. Oil, Chemical and Atomic Workers Int'l Union, Local 7–1, Inc.*, 548 F.2d 1288, 1293–94 (7th Cir.), *cert. denied*, 431 U.S. 905, 97 S.Ct. 1697, 52 L.Ed.2d 389 (1977), *quoting United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). In the context of these inquiries, an arbitrator's award draws its essence from the agreement "so long as the interpretation can in some rational manner be derived from the agreement, 'viewed in light of its language, its context, and any other indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award.'" *Amoco Oil Co.*, 548 F.2d at 1294, *quoting Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir.1969). Thus, I should be loathe to set aside an award of an arbitrator acting in conformity with the letter and spirit of the collective bargaining agreement, and I will not do so unless the grievance is not arbitrable, indicia of fairness are absent, or the procedure is tainted by fraud or deceit, *Cannon v. Consolidated Freightways Corp.*, 524 F.2d 290 (7th Cir.1975), or the award is flatly contrary to public policy. *Local P–1236, Amalgamated Meat Cutters v. Jones Dairy Farm*, 519 F.Supp. 1362 (W.D.Wis.1981), *aff'd*, 680 F.2d 1142 (7th Cir.1982).

■■■ I do not think the arbitrator exceeded his authority by refusing to permit Mr. Scott to return to the worksite and reenact the incident that led to his discharge. Mr. Scott's excuse for stopping the line was that a co-worker, a Mr. Purvis, extended his arm into the area in which Mr. Scott was operating a saw. Apparently, plaintiff believes it was necessary to have Mr. Scott present during the inspection, so the arbitrator could observe a man of Scott's physical dimensions perform in the allotted space. The arbitrator disagreed, probably because Mr. Scott's efforts to retrace his steps would be deceptive and self-serving. In view of the fact that counsel for and officers of the plaintiff were present at the inspection,[1] I do not think the decision was unfair.

However, plaintiff argues that this decision denied Mr. Scott his right to procedural due process. In support of its contention, plaintiff relies on *Chauffers, Teamsters & Helpers Local Union No. 878 v. Coca-Cola Bottling Co.*, 613 F.2d 716 (8th Cir.1980), for the proposition that procedural due process is an integral component of an arbitral determination of just cause. Because the collective bargaining agreement in the present case provides that an employee may not be discharged without "just cause," plaintiff argues that the arbitrator was bound to afford procedural due process to Mr. Scott, and that the arbitrator's refusal to permit Mr. Scott to attend the on-site inspection amounted to a denial of due process.

■■■ The contention that notions of procedural due process should guide an arbitration proceeding is not without merit, but I have no occasion to so hold. The difficulty with plaintiff's argument is that *Coca-Cola Bottling Co.* and the other cases it relies on are merely supportive of the proposition that in some circumstances, an arbi-

**1.** Indeed, it is not disputed that Mr. Purvis, Mr. Scott's co-worker on the day of the incident, was present at the inspection in his capacity as a union steward.

trator may decide that "just cause" invokes certain procedural rights and, given the narrow standard of review, a court must let that decision stand. Review of the authorities indicates that it is the arbitrators, not the reviewing courts, who determine arbitral due process,[2] and the courts tend to enforce their awards unless they do not draw their essence from the collective bargaining agreements. In the present case, the arbitrator implicitly found that a fair determination of just cause did not require Mr. Scott's presence during the on-site inspection. I do not find this decision to be so irreconcilably at odds with the collective bargaining agreement that it must be set aside.

■ I reject plaintiff's argument that the arbitrator substituted his judgment for that of the parties when he observed that Mr. Scott's conduct on September 16, 1981 was sufficient grounds for discharge. The argument assumes that the arbitrator denied the grievance solely on the basis of his understanding of that incident. I read the arbitrator's opinion somewhat differently. While it is true that the arbitrator remarked that the occurrence alone was adequate cause for the discharge, he also reviewed Mr. Scott's work record and the defendant's efforts to advise him to improve his performance. The award reflects a thoughtful review of all the materials submitted by the parties; it does not suggest that the arbitrator relied solely on the September 16th incident. Therefore, plaintiff's assumption is simply wrong, and so is the derivative argument.

■ The contention that the arbitrator improperly ignored the· facts found in the DILHR proceeding is also without merit. The plaintiff's argument is that the DILHR's finding that Mr. Scott had a valid safety purpose in mind when he stopped the line was a conclusive determination of the issue of the propriety of Mr. Scott's behavior. Therefore, plaintiff contends it should be given collateral estoppel effect.

I disagree. First, the parties agreed that grievances would be taken to an arbitrator, whose determination would be final and binding. In my view, the parties contracted for the decision of an arbitrator, not for the decisions of the DILHR. In the absence of a contrary provision in the collective bargaining agreement, I find no reason to require an arbitrator to give binding effect to the DILHR's factual findings. *Stroh Die Casting v. Int'l Ass'n of Machinists and Aerospace Workers, Lodge No. 10*, 553 F.Supp. 68 (E.D.Wis.1982).

■ Nor do ·I find that the arbitrator's award was the product of fraudulent or deceitful conduct by either party. The .thrust of plaintiff's argument is that defendant's counsel informed the arbitrator that the DILHR decision was being appealed to a Circuit Court of Wisconsin, which was not true at the time. The suggestion is that defense counsel sought impermissibly to persuade the arbitrator that the fictitious appeal deprived the DILHR findings of their conclusive effect. This argument has two faults. First, the post-hearing briefs before the arbitrator disclose that an appeal was subsequently taken but later withdrawn as untimely. The arbitrator was fully aware that defense counsel's statement was incorrect; he was not deceived. Second, the entire issue of whether there was an appeal in the unemployment benefits proceeding is irrelevant, because the arbitrator properly concluded that the DILHR factual findings were not binding. In view of these flaws, this argument is dismissed as specious.

■ The plaintiff's argument that Mr. Scott was the victim of disparate treatment, and that the arbitrator failed to consider this factor, must also be rejected. The parties post-hearing briefs discuss this aspect of the grievance in exhaustive detail, and the arbitrator expressly found that, in view of Mr. Scott's poor record as an employee, his "only salvation" was in

---

**2.** *See, e.g.,* Getman, *Labor Arbitration and Dispute Resolution,* 88 Yale L.J. 916 (1979); Summers, *Individual Protection Against Unjust Dis-* *missal: Time for a Statute,* 62 Va.L.Rev. 481 (1976).

the plaintiff's claim of disparate treatment. The arbitrator went on to find that Mr. Scott had been given five verbal warnings and two written warnings, and that he had been present at three meetings where the defendant prevailed upon him to improve his performance. I do not find the arbitrator's rejection of the disparate treatment claim to be unfair or unfaithful to the collective bargaining agreement.

Finally, enforcing this award does not run counter to public policy. Plaintiff's argument to the contrary relies on *Local P–1236, Amalgamated Meat Cutters & Butcher Workmen of North America, AFL–CIO v. Jones Dairy Farm*, 519 F.Supp. 1362 (E.D.Wis.1981), *aff'd.*, 680 F.2d 1142 (7th Cir.1982). In that case, the defendant employer had established a rule that required employees to report unsanitary conditions to their supervisors rather than to United States Department of Agriculture inspectors. The plaintiff union challenged the rule, but the arbitrator found that it was neither arbitrary nor unreasonable nor overbroad. In an action to set aside the award, the district court concluded that the absolute nature of the rule was a fatal defect, because an employee could risk termination by informing the U.S.D.A. of a serious condition that remained uncorrected long after having been brought to management's attention. In the present case, plaintiff contends that to sustain the award would have a chilling effect on an employee's right to take action in light of a *bona fide* safety purpose.

■ The argument assumes that Mr. Scott had a *bona fide* safety purpose in mind when he stopped the line on September 16th. The arbitrator considered the circumstances surrounding the incident, and reviewed Mr. Scott's dismal performance record. In view of Mr. Scott's apparent habit of stopping the line as a means of taking vengeance on his co-workers, and in view of a record demonstrating that he was inconsiderate, insubordinate and incompe-

tent, the arbitrator had ample support for the conclusion that Mr. Scott was not motivated by safety concerns when he stopped the line. The arbitrator had no occasion to consider whether employees were routinely compelled to perform unsafe tasks. Therefore, this is not a proper case for establishing a "chilling effect" component to the public policy exception applied in *Jones Dairy Farm*.[3] Because plaintiff has failed to provide a compelling argument for vacating the award, its motion for summary judgment will be denied, and defendant's will be granted.

■ The next point of contention is the defendant's motion for attorney's fees. I find that the request is premature, because generally the matter is not raised until after judgment for one party has been entered. Notwithstanding defendant's alacrity, I do not believe that attorney's fees should be awarded in this case. While certain of plaintiff's contentions had less merit than others, I do not find that its overall position was "so wholly devoid of merit as to warrant the imposition of costs and fees." *Amoco Oil Co. v. Oil, Chemical & Atomic Worker's Int'l Union, Local 7–1, Inc.*, 548 F.2d 1288, 1296 (7th Cir. 1976). Moreover, a review of the matters filed before the arbitrator indicates that his decision had a significant impact on the interests of the plaintiff's members. Thus, I am disinclined to believe the action was brought in bad faith.

■ The plaintiff has also moved for an award of attorney's fees: specifically, it seeks to recover the costs of opposing defendant's motion for attorney fees. The motion is denied, much for the same reason that defendant's motion was denied: the opposing position was not without some merit.

THEREFORE, IT IS HEREBY ORDERED that defendant's motion for summary judgment is granted.

---

3. Indeed, the district court in *Jones Dairy Farm* specifically rejected the plaintiff's First Amendment "chilling effect" argument, because the requisite linkage with state action was absent. It is absent here as well.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is denied.

IT IS FURTHER ORDERED that defendant's motion for attorney's fees is denied.

IT IS FURTHER ORDERED that plaintiff's motion for attorney's fees is denied.