LOCAL NO. P–1236, AMALGAMATED MEAT CUTTERS & BUTCHER WORKMEN OF NORTH AMERICA, AFL–CIO, Plaintiff-Appellee,

v.

JONES DAIRY FARM, Defendant-Appellant.

No. 81–2467.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 26, 1982.

Decided June 3, 1982.

Herbert P. Wiedemann, Foley & Lardner, Milwaukee, Wis., for defendant-appellant.

Kenneth R. Loebel, Habush, Habush & Davis, S. C., Milwaukee, Wis., for plaintiff-appellee.

Before BAUER and POSNER, Circuit Judges, and BARTELS, Senior District Judge.*

BAUER, Circuit Judge.

Defendant Jones Dairy Farm (the Company) appeals from the district court order granting Local No. P–1236's motion for summary judgment and permanently enjoining the Company from enforcing the work rule prohibiting its employees from dealing directly with the United States Department of Agriculture (USDA) regarding plant problems. We affirm.

The Company, a Wisconsin corporation, processes meat products sold in interstate commerce; the Union represents the production and maintenance workers at the Company plant. On May 11, 1978, William Roberts, a Company employee and president of Local No. P–1236, reported unsanitary plant conditions to USDA inspectors. Although the Company had never reprimanded Roberts when he had reported unsanitary conditions to USDA inspectors in the past, this time the Company sent Rob-

* The Honorable John R. Bartels, Senior Judge of the United States District Court for the Eastern District of New York, is sitting by designation.

erts a letter chastising him for bypassing his direct supervisor and warning him against dealing directly with the USDA inspectors in the future. Shortly after the incident, the Company promulgated a new rule which provided that "employees must deal through supervision or designated plant management rather than directly with USDA government inspectors in reporting ... deficiencies, violations, or other plant problems," and warned that "[a]ny deviation from this rule will result in appropriate disciplinary action ...." Appellant's br. at 7.

The collective bargaining agreement in effect at the time the Company adopted the new rule provided that the Company had exclusive management control of all plant operations, including management of the employees. Despite this provision granting the Company sole authority to direct plant operations, the Union maintained that the rule violated the collective bargaining agreement and the National Labor Relations Act (NLRA). It also maintained that the Company's reprimand of Roberts and the rule itself violated the first amendment and was against public policy. For these reasons, it filed an unfair labor practice charge with the National Labor Relations Board (NLRB) and a grievance under the collective bargaining agreement.

The NLRB issued a complaint with respect to Roberts' reprimand; however, it refused to challenge the validity of the rule. Ultimately, the parties reached a settlement whereby the Company revoked Roberts' reprimand but denied that it had violated the NLRA.

The Union also pursued its grievance under the collective bargaining agreement to arbitration. An arbitrator conducted a hearing and issued his award in favor of the Company, finding that the rule was not arbitrary, unreasonable, or overbroad and that it did not violate public policy, any statute, or the constitution. Thereafter, the Union filed its complaint in district court, reasserting its public policy and first amendment arguments but omitting the claim that the collective bargaining agreement had been violated.

The district court found that the rule was not unconstitutional, but that it was contrary to public policy and violated the collective bargaining agreement. It concluded that merely vacating the arbitrator's award might not dispel employees' beliefs that the rule was valid. The employees, in turn, might then refrain from reporting serious problems to the USDA inspectors even when the problems had been reported to the Company but remained uncorrected. Thus, the district court entered an order not only vacating the rule but also permanently enjoining its future enforcement.

The Company challenges the district court's holding on two grounds. First, it maintains that the district court had no authority to review the merits of the arbitration award because there is no evidence that the arbitrator misunderstood the law or refused to apply it. Second, the Company alleges that even if an allegation that the work rule violated public policy provides a proper basis for judicial intervention, no public policy considerations bar enforcement of this rule. Neither of these contentions is persuasive.

I

The threshold question is whether a district court has the authority to vacate an arbitration award which it believes is contrary to public policy. The district court noted that no Seventh Circuit case has specifically addressed this issue. Nevertheless, relying on *Steelworkers' Trilogy*[1] and *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), it concluded that the arbitrator's sole authority was to construe and apply the collective bargaining agreement and that where, as here, the interests of the public as well as the parties to the agreement were involved, the court had no duty to defer to the arbitral process.

**1.** *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

The Company characterizes the public policy issue as a question of law. While conceding that public policy may bar enforcement of a collective bargaining agreement in some circumstances, it argues that the arbitrator already considered, and rejected, the public policy argument before issuing his award. Relying on several cases defining manifest disregard,[2] the Company maintains that, even if the arbitrator misconstrued the public policy considerations, the award may only be vacated where there has been a manifest disregard of the law. The Company insists that the district court's disagreement with the arbitrator's analysis of the public policy issue does not indicate that the arbitrator disregarded the law.

■ We agree with the Company that federal courts play a limited role in reviewing the substantive merits of an arbitrator's award.[3] *NLRB v. Pincus Bros., Inc.-Maxwell*, 620 F.2d 367 (3d Cir. 1980). Courts lack authority to decide not to enforce an arbitrator's award when that award "draws its essence from the collective bargaining agreement," *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960), even where the arbitrator has committed an error of fact or law in interpreting the agreement. *Washington-Baltimore Newspaper Guild v. Bureau of National Affairs, Inc.*, 83 Lab.L.Rep. (CCH) ¶ 10,480, 97 LRRM 3068 (D.D.C.1978).

■ However, we do not agree with the Company's application of the law to the facts in this case. We reject the Company's contentions that the public policy issue is a question of law or that manifest disregard of the law is the only ground on which a court may vacate an arbitrator's award. *See United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598, 80

S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). Public policy considerations are wholly independent of the collective bargaining agreement. When an arbitrator bases his award on public policy considerations, he has overstepped his authority and the court may review the substantive merits of the award. *International Brotherhood of Teamsters, Local 249 v. Western Pennsylvania Motor Carriers Assoc.*, 574 F.2d 783 (3d Cir. 1978); *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1129 (3d Cir. 1969); *Morales v. Vega*, 483 F.Supp. 1057 (D. Puerto Rico 1979).

The award here unquestionably involves public policy considerations. It affects not only the Company and its employees but also the consuming public which does not participate in the arbitration but which nonetheless has a very real interest in insuring that meat and meat products are processed under sanitary conditions. *See* Meat Inspection Act, 21 U.S.C. § 601 *et seq.* The district court was correct in concluding that it had the authority to review the award on the basis of public policy considerations.

II

We now consider whether the rule was, in fact, contrary to public policy. While it is beyond dispute that insuring sanitary conditions in meat packing plants is an important public policy, that policy is not necessarily violated by a rule which requires employees to first report violations of the law to the Company.

The district court specifically rejected many of the Union's arguments on the public policy issue. It found that requiring employees to report problem conditions to Company supervisors was not a per se violation of public policy and noted that it was "in the public's interest that problems identified by line workers be brought to the

**2.** *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953); *Drayer v. Krasner*, 572 F.2d 348, 352 (2d Cir.), *cert. denied*, 436 U.S. 948, 98 S.Ct. 2855, 56 L.Ed.2d 791 (1978); *San Martine Compania de Navegacion v. Saguenay Terminals, Ltd.*, 293 F.2d 796, 801–02 (9th Cir. 1961); *Eddie S.S. Co., Ltd. v. Czarnikow-Rionda Co.*, 480 F.Supp. 731, 733–34 n.4 (S.D.N.Y.1979); *Bell Aerospace Co. Division of Textron, Inc. v.*

*Local 516, UAW*, 356 F.Supp. 354 (W.D.N.Y. 1973), *rev'd in part on other grounds*, 500 F.2d 921 (2d Cir. 1974).

**3.** These limitations are imposed by statute, United States Arbitration Act, 9 U.S.C. § 10, as well as case law. *See Steelworkers Trilogy, supra* note 1.

attention of those who are responsible for remedying them." *Local P–1236, Amalgamated Meat Cutters v. Jones Dairy Farm,* 519 F.Supp. 1362, 1371, No. 79 C 377 (W.D. Wis.1981) at 14. Moreover, the district court found no evidence that the rule was promulgated in order to penalize employees who complain about unsanitary conditions. The court also recognized that employees were adequately protected from any retaliatory conduct for complaining about unsanitary conditions because they could file an unfair labor practice charge with the NLRB. Nevertheless, the district court held that the rule was contrary to public policy because it prohibited employees from directly contacting USDA inspectors even if a serious problem remained uncorrected for an unreasonably long period of time after an employee has reported the condition to Company supervisors.

█ We agree with the district court that in balancing the public policy of insuring sanitary conditions in meat processing with the Company's right to direct its plant operations as it deems most efficient, the public policy outweighs the Company's interests. Thus, we cannot uphold any rule forbidding employees from contacting inspectors regardless of the circumstances. The Company's rule is facially defective because it is overly broad and fails to allow for exigent circumstances.

█ Mindful of the important role that arbitration plays in furthering the federal policy of industrial peace, we are aware that when a court bars enforcement of an arbitration award on the basis of public policy, that public policy must be clearly defined. *Local 453, International Union of Electrical Workers v. Otis Elevator Co.,* 314 F.2d 25 (2d Cir. 1963), cited with approval in *International Assoc. of Machinists, District No. 8 v. Campbell Soup Co.,* 406 F.2d 1223 (7th Cir.), *cert. denied,* 396 U.S. 820, 90 S.Ct. 57, 24 L.Ed.2d 70 (1969). The public policy involved here dictates that: (1) it is essential that the health and welfare of consumers be protected by assuring that meat and meat food products are unadulterated; (2) meat and meat food products be inspected to prevent traffic in diseased and unwholesome meats; (3) standards of sanitation be enforced throughout the plant; and (4) USDA inspectors and the Company be encouraged to join forces to maintain such standards of sanitation. Meat Inspection Act, 21 U.S.C. §§ 602, 603, 606. *See also National Pork Producers Council v. Bergland,* 631 F.2d 1353 (8th Cir. 1980), *cert. denied,* 450 U.S. 912, 101 S.Ct. 1350, 67 L.Ed.2d 335 (1981); *Community Nutrition Institute v. Butz,* 420 F.Supp. 751 (D.D.C. 1976).

Our conclusion that the rule as it is now written is too absolute in its prohibition does not preclude the Company from promulgating a narrower rule which requires employees to first report violations to the management but which permits employees to report directly to the USDA inspectors if the conditions remain uncorrected for a specified time. We merely hold here that the Company may not impose an absolute prohibition against contacting USDA inspectors. Accordingly, the judgment of the district court is

AFFIRMED.