**UNITED STATES POSTAL SERVICE, Plaintiff, Appellee,**

v.

**AMERICAN POSTAL WORKERS UNION, AFL–CIO, Defendant, Appellant.**

**No. 84–1094.**

United States Court of Appeals, First Circuit.

Argued May 9, 1984.

Decided June 19, 1984.

Joel C. Martin, Portland, Me., with whom Susan E. Peck, Arthur M. Luby, Petruccelli, Cohen, Erler & Cox, Portland, Me., and O'Donnell & Schwartz, Washington, D.C., were on brief, for defendant, appellant.

Susan R. Klavens, Atty., Office of Labor Law, United States Postal Service, with whom Richard S. Cohen, U.S. Atty., F. Mark Terison, Asst. U.S. Atty., Portland, Me., and D. Richard Froelke, Asst. General Counsel, Washington, D.C., were on brief, for plaintiff, appellee.

Before CAMPBELL, Chief Judge, BREYER, Circuit Judge, and PETTINE,[*] Senior District Judge.

PETTINE, Senior District Judge.

This case is an appeal of a district court ruling which overturned a labor arbitration award. We affirm the district court.

Donald Cote was a window clerk at the post office in Sanford, Maine. His duties included selling money orders, cashing money orders, and other matters involving the handling of money. An investigation of financial discrepancies at the Sanford post office revealed that $4,325.00 worth of postal money orders had been issued by Cote between November 1981 and January 1982 without prepayment. Cote signed a confession, was indicted, and subsequently pled guilty to a charge of embezzling postal funds in violation of 18 U.S.C. § 500. Cote received a one year suspended sentence and was put on probation for two years, in addition to being ordered to make full restitution to the Postal Service.

During this same period, the Postal Service discharged Cote. His Notice of Removal laid three charges against him, all of which stemmed from his embezzlement activities. As he was a member of a bargaining unit represented by the appellant Union, the Union took the issue of Cote's discharge to binding arbitration pursuant to the National Agreement between the Postal Service and the Union. A hearing was held before an arbitrator on July 27, 1982, to determine whether the Postal Service had "just cause" to fire Cote.

One month later, the arbitrator rendered a decision which ordered that Cote be reinstated without back pay. The arbitrator focussed on Cote's intent in taking the money and found that he did not intend to keep it, but rather to repay it when he could. The arbitrator relied on evidence of past repayments by Cote, Cote's retention of records of money orders issued, unusual financial pressures on Cote, and Cote's record of seven years employment without disciplinary problems. Therefore, the arbitrator ruled that

> The Postal Service did not have just cause for the removal of Mr. Cote, however, it did have just cause to suspend Mr. Cote without back pay and to transfer Mr. Cote away from a window clerk position to another position where similar action as [that] involved in this case could not take place.

---

[*] Of the District of Rhode Island, sitting by designation.

The Postal Service then filed this action to vacate the arbitrator's award. The Postal Service challenged the award on two grounds: first, that the arbitrator failed to give proper collateral estoppel effect to Cote's conviction in that the arbitrator found that Cote intended to repay the money, and, second, that ordering the reinstatement of Cote was contrary to public policy. The parties filed cross-motions for summary judgment, and the matter went before a magistrate.

The magistrate rejected the Postal Service's first argument. He found that the arbitrator had considered the 18 U.S.C. § 500 conviction but that the broad language of the statute did not mandate permanent intent to keep the funds as an element of the crime. On its second argument, the Postal Service fared better and the magistrate agreed that the reinstatement award violated "an important public policy against embezzlement of Government money." He therefore recommended that summary judgment be entered in favor of the Postal Service. The district judge accepted the recommendation and entered judgment for the Postal Service. The Union appealed.

The heart of the Union's argument is that although there may be a public policy against embezzling Postal Service funds, there is no public policy against the Postal Service employing convicted embezzlers. You have to have something more—a direct legal prohibition. And, in support the Union compares the instant case with *American Postal Workers Union v. United States Postal Service*, 682 F.2d 1280 (9th Cir.1982), *cert. denied*, 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983) (arbitrator's award reinstating Postal Service employee who had participated in strike vacated because of statute prohibiting employment of individuals who had participated in strikes) and with *General Teamsters Local Union 249 v. Consolidated Freightways*, 464 F.Supp. 346 (W.D.Pa. 1979) (arbitrator's award upholding employer discharges of truck drivers who refused to drive trucks lacking mud flaps, despite state law requiring mud flaps, va-

cated because award compelled drivers to violate state law). Although these cases exhibit a particularly precise fit between the facts of the case and the public policy vindicated, an examination of the case law reveals that such a close fit is not required.

In *Amalgamated Meat Cutters v. Great Western Food Co.*, 712 F.2d 122, *reh. and reh. en banc denied, id.* (5th Cir.1983), a case cited with apparent approval in the Union's brief, an arbitrator ordered an employer to reinstate a truck driver who had admitted to drinking prior to overturning an eighteen-wheel rig he was driving. The arbitrator stated that he ordered the driver's reinstatement because his employer had failed to disprove the driver's assertion that a steering mechanism failure had caused the accident; however, the arbitrator denied the driver back pay because the driver admitted to drinking and paying too much attention to his citizens band radio while driving. The Fifth Circuit vacated the award on the grounds of the public policy against drinking and driving. *Id.* at 124–25. Although the court cited cases which were directly on point, the opinion makes it clear that the court relied primarily on the general policy against drinking and driving and its special importance when applied to professional drivers. As that court stated in summation,

> the public policy of preventing people from drinking and driving is embodied in the case law, the applicable regulations, statutory law, and pure common sense. The policy is "well defined and definite." *W.R. Grace & Co.*, [461] U.S. [757] at [——], 103 S.Ct. [2177] at 2182 [76 L.Ed.2d 298]. To enforce the arbitrator's award in this case, an award which compels the reinstatement to driving duties of a truck driver who admittedly drank while on duty, would violate this public policy.

712 F.2d at 125.

Similarly, in *Local No. P-1236, Amalgamated Meat Cutters v. Jones Dairy Farm*, 680 F.2d 1142 (7th Cir.1982), the public policy was that of processing meat under

sanitary conditions while the subject of the arbitration was an employer's rule prohibiting employees from directly contacting federal meat inspectors about unsanitary conditions. The Seventh Circuit found that a rule which required employees to report problems first to company officials would not violate the public policy. *Id.* at 1144. However, since the rule prohibited employees from notifying Department of Agriculture inspectors regardless of the circumstances, the court found the rule "facially defective because it is overly broad ...." *Id.* at 1145.

The Union also urges that the instant case is comparable to *Local 453, International Union of Electrical Workers v. Otis Elevator Co.,* 314 F.2d 25 (1963). In *Local 453,* the Second Circuit reversed a district court ruling which had vacated an arbitrator's award ordering the reinstatement of an employee discharged for gambling on the company's premises. As in this case, the employee felt the sting of criminal sanctions for his misdeeds. The Second Circuit in *Local 453* held that the public policy against gambling at work was sufficiently vindicated through criminal sanctions and a suspension from work, and that public policy did not require discharge. *Id.* at 29.

Cote's case, though, is distinguishable. The offense in *Local 453* was tangential to the employee's job as a factory worker—in the instant case, the offense went to the heart of the worker's responsibilities. As a window clerk, Cote was entrusted with large amounts of money and valuable postal materials. As a postal employee, he represented a branch of the federal government and was imbued with the public trust. His actions directly violated that trust.

As the Postal Service points out, putting a postal employee in a job removed from stamps and money does not remove his chances of violating the public trust. Any postal position which handles mail is one entrusted with items of importance and value by the public. Envelopes containing government checks or items which are insured disclose to all who see them the valuable items inside. If the Postal Service did not have confidence in an employee's trustworthiness it would be, at a minimum, negligent to not keep close watch on him. Such close supervision as might be prudent could well be too costly to be even remotely efficient.

■ When a court bars the enforcement of an arbitration award on the basis of public policy, that policy must be clearly defined. *Local 453, supra.* The policies in this case are not only defined by positive law, but are also the clear dictates of common sense. A postal employee is required to swear that he "will well and faithfully discharge the duties of the office on which [he is] about to enter." 39 U.S.C. § 1011. Numerous statutes relate to the conduct and honesty of postal employees—among them is 18 U.S.C. § 500, the statute under which Cote was convicted. Moreover, the Postal Service is required by law to be "prompt, reliable, and efficient ...." 39 U.S.C. § 101(a). Finally, as a government monopoly, the public has to use the Postal Service for the carriage of regular letter mail.

Aside from any considerations bearing directly on Cote, we cannot avoid the common sense implications that requiring the rehiring of Cote would have on other postal employees and on the public in general. Other postal employees may feel there is less reason for them to be honest than they believed—the Union could always fix it if they were caught. Moreover, the public trust in the Postal Service, and in the entire federal government, could be diminished by the idea that graft is condoned.

■ This opinion is not to be taken as authority for the proposition that there is a public policy against the Postal Service employing anyone who has been convicted of a crime. As the Second Circuit noted in *Local 453, supra,*

in light of the important role which employment plays in implementing the public policy of rehabilitating those convicted of crime, there can hardly be a public policy that a man who has been convict-

ed, fined, and subjected to serious disciplinary measures, can never be ordered reinstated to his former employment . . . .

314 F.2d at 29.

However, given its important public trust and its mandate of efficiency, it violates public policy to force the Postal Service to reinstate an employee who was recently convicted of directly violating his fiduciary duties through the embezzlement of a large sum of money from it.

*Affirmed.*