**NATIONAL RURAL LETTER CARRIERS' ASSOCIATION, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

**Civ. A. No. 85–2032.**

United States District Court, District of Columbia.

Jan. 16, 1986.

William B. Peer, David Jonathan Cohen, Barbara L. Camens, Barr & Peer, Washington, D.C., for plaintiff.

Scott T. Kragie, Asst. U.S. Atty., Alice L. Covington, Office of Labor Law, U.S. Postal Service, Washington, D.C., for defendant.

OPINION

JUNE L. GREEN, District Judge.

The National Rural Letter Carriers' Association ("Union") took to arbitration the firing of an auxiliary rural letter carrier, Mark A. Schwartz, by the United States Postal Service ("USPS"). On May 27, 1985, Arbitrator Marshall J. Seidman ordered the USPS to reinstate Mr. Schwartz. The USPS has refused to comply with this order. Now before the Court are cross-motions for summary judgment. Plaintiff seeks a judgment enforcing the arbitration decision, while defendant seeks a judgment vacating the arbitrator's award. For the reasons stated below, the Court grants the plaintiff's motion for summary judgment

and orders that the arbitration award be enforced.

## I. Statement of Facts

Mark A. Schwartz was employed by the USPS as a rural letter carrier for approximately four years. Mr. Schwartz is a member of the Union which is the collective bargaining representative of some 67,000 rural letter carriers employed by the USPS. The Union negotiated and executed a collective bargaining agreement with the USPS in 1981. Plaintiff's Statement of Material Facts As To Which There Is No Genuine Issue ("Plaintiff's Statement") ¶¶ 1, 2, 4, 5.

On November 23, 1984, Mr. Schwartz was fired from his position as an auxiliary letter carrier for the Bartonville, Illinois, Post Office. His removal stemmed from his arrest on August 16, 1984, and subsequent indictment for the offense of aggravated criminal sexual abuse of a minor, his adopted daughter. On October 15, 1984, an Illinois circuit court dismissed the charge because Mr. Schwartz entered a voluntary deferred prosecution program which provided that he seek counseling and pay a fine. The USPS initially suspended Mr. Schwartz indefinitely due to these charges, and later decided to terminate his employment. Defendant's Statement of Material Facts As To Which No Genuine Issue Exists ("Defendant's Statement") ¶¶ 4, 5, 9, 10, 11, 12, 13.

Pursuant to Article 15 of the National Agreement between plaintiff and defendant, grievances were filed contesting Mr. Schwartz's suspension and removal. Defendant's Statement ¶ 14. The USPS agreed to arbitration and participated in it. An arbitration hearing was held on April 19, 1985. Plaintiff's Statement ¶¶ 14, 16.

In his May 27, 1985, Opinion and Award, the arbitrator concluded that the USPS violated Article 16 of the National Agreement because the branch manager of the Bartonville, Illinois, office made no independent judgment and gave no consideration to the proper penalty for the grievant's actions but simply accepted the recommendations made to him by the Management Sectional Center without any independent evaluation. Upon the basis of this procedural violation, the arbitrator ordered Mr. Schwartz reinstated without back pay. *Id.* ¶ 19. The arbitrator acknowledged that Mr. Schwartz had been indicted for a crime, that this crime arguably was a crime for which discipline could be imposed, that there was no question of fact as to the criminal act because it was based upon Mr. Schwartz's admission, and that his arrest was publicized. *Id.* ¶ 20.

## II. Conclusions of Law

### A. Courts' Deference to Arbitration

It is a basic tenet of Federal labor policies that collective bargaining and labor arbitration are much favored. Congress stated, "Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective bargaining agreement." 29 U.S.C. § 173(d). Congress extended these policies to labor relations with the USPS in the Postal Reorganization Act of 1970, "Collective bargaining agreements between the Postal Service and bargaining representatives ... may include ... procedures culminating in binding third-party arbitration...." 39 U.S.C. § 1206(b).

The Supreme Court, in the *Steelworkers Trilogy,* acknowledged the importance of labor arbitration in the scheme of labor relations. *See United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior and Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). The Supreme Court dealt specifically with the question of reviewing arbitral awards:

> The refusal of the courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes

would be undermined if courts had the final say on the merits of the awards. *United Steelworkers v. Enterprise Wheel and Car Corp.*, 363 U.S. at 596, 80 S.Ct. at 1360. The Court reasoned that

> [i]t is the arbitrator's construction which was bargained for, and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

*Id.* at 599, 80 S.Ct. at 1362.

In the present case, the Union sought and the USPS agreed to take the issue of Mr. Schwartz's firing to arbitration. The parties proceeded under a valid collective bargaining agreement and no procedural error was alleged. While acknowledging the reluctance of courts to review the merits of an arbitration award, the USPS contends that the Court must vacate Arbitrator Seidman's award because he exceeded the scope of his authority under the collective bargaining agreement. Defendant's Motion for Summary Judgment at 4–5. Specifically, defendant urges the Court to vacate the arbitration award because it is contrary to public policy.

### B.  *The "Public Policy Exception"*

The courts have refused to enforce arbitration awards that are contrary to public policy. *See, e.g., United States Postal Service v. American Postal Workers Union*, 736 F.2d 822 (1st Cir.1984); *Amalgamated Meat Cutters v. Great Western Food Co.*, 712 F.2d 122, *reh'g denied*, 717 F.2d 1399 (5th Cir.1983); *American Postal Workers Union v. United States Postal Service*, 682 F.2d 1280 (9th Cir.1982), *cert. denied*, 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983). The public policy exception is, however, a narrow one. *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983); *see also* R. Gorman, *Basic Text on Labor Law* 593–98 (1976).

In the *W.R. Grace* case, an employer entered into a conciliation agreement with the Equal Employment Opportunity Com-

mission to remedy past discrimination. Compliance with the agreement violated the seniority provision of the employer's collective bargaining agreement, and resulted in layoffs in violation of the collective bargaining agreement. One arbitrator held the employer was not liable for back pay to laid-off employees because of the conciliation agreement. A second arbitrator held that he was not bound by the first arbitrator's decision, and awarded other laid-off employees back pay. The employer argued that public policy forbade awarding back pay under the collective bargaining agreement when the employer was meeting its obligation under Title VII of the Equal Rights Act of 1964.

In upholding enforcement of the second arbitrator's award, the Court stressed how carefully the public policy exception must be circumscribed.

> [A] court may not enforce a collective bargaining agreement that is contrary to public policy. *See Hurd v. Hodge*, 334 U.S. 24, 34–35 [68 S.Ct. 847, 852–53, 92 L.Ed. 1187] (1948) ... [The second arbitrator's] view of his own jurisdiction precluded his consideration of this question, and, in any event, the question of public policy is ultimately one for resolution by the courts. *See International Brotherhood of Teamsters v. Washington Employers, Inc.*, 557 F.2d 1345, 1350 (C.A.9 1977) ... If the contract as interpreted by [the second arbitrator] violates some explicit public policy, we are obliged to refrain from enforcing it. *Hurd v. Hodge*, 334 U.S. at 35 [68 S.Ct. at 853] ... Such a public policy, however must be well defined and dominant, and is to be ascertained "by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Muschany v. United States*, 324 U.S. 49, 66 [65 S.Ct. 442, 451, 89 L.Ed. 744] (1945).

*W.R. Grace & Co. v. Local Union 759*, 461 U.S. at 766, 103 S.Ct. at 2183.

In line with the *W.R. Grace* decision, the Court of Appeals for the District of Columbia has noted that "... reviewing courts

have all too frequently explored the merits of arbitration awards." *Washington Hospital Center v. Service Employees Local 722*, 746 F.2d 1503, 1515 (D.C.Cir.1984). "[T]his Circuit has said '[t]hat the better view is that an award will not be vacated even though the arbitrator may have made, in the eyes of judges, errors of fact and law unless it compels the violation of law or conduct contrary to accepted public policy.' *Washington-Baltimore Newspaper Guild, Local 35 v. Washington Post Co.*, 442 F.2d 1234, 1239 (D.C.Cir.1971)." *Id.* at 1514.

The USPS cites numerous court decisions and several Merit Systems Protection Board decisions to buttress its contention that enforcement of Arbitrator Seidman's award would, indeed, violate the public policy of removing individuals who commit morals offenses, especially morals offenses against minors, from positions of public trust. Defendant's Motion for Summary Judgment at 8–16. Specifically, the USPS urges that public policy grounds for refusing to enforce the instant arbitration award are compelling here because of the high standard of conduct to which USPS employees must be held.

First, it must be noted that much of the authority cited by defendant where the public policy exception was operative arose outside of the collective bargaining context. *See, e.g., Bonet v. United States Postal Service*, 712 F.2d 213 (5th Cir.1983); *Yacovone v. Bolger*, 645 F.2d 1028 (D.C.Cir.), *cert. denied*, 454 U.S. 844, 102 S.Ct. 159, 70 L.Ed.2d 130 (1981). Second, courts in this Circuit have effectively rejected the liberal reading of the public policy exception adopted by the First Circuit and the Fifth Circuit. *See, e.g., Service Employees Local 722 v. Children's Hospital National Medical Center*, 117 LRRM 2486 (D.D.C. 1984); *Washington-Baltimore Newspaper Guild, Local 35 v. The Washington Star Co.*, 113 LRRM 3133 (D.D.C.1982). *But see United States Postal Service v. American Postal Workers Union*, 736 F.2d 822 (1st Cir.1984); *Amalgamated Meat Cutters Local Union 540 v. Great Western Food Co.*, 712 F.2d 122, *reh'g denied*, 717

F.2d 1399 (5th Cir.1983). Third, although the legal precedent indicates that valid grounds for dismissal exist where persons are charged with or convicted of morals offenses, it does not establish a clear public policy against reinstating persons so charged to positions in public employment.

The defendant also notes that the offense for which Mr. Schwartz was indicted is a violation of Illinois state law, and undoubtedly the law of all states. While this is true, the indictment against Mr. Schwartz was dropped upon his entering a voluntary deferred prosecution program and paying a fine. The Court knows of no statute that prohibits outright people in such circumstances from working for the USPS. Presumably the arbitrator was cognizant of the circumstances surrounding Mr. Schwartz's offense and the nature of the USPS. Whether, in this context, Mr. Schwartz's offense constituted a sufficient violation of the general standards of conduct set forth in the collective bargaining agreement to require dismissal was solely for the arbitrator to determine. *United Steelworkers v. Enterprise Wheel and Car Corp.*, 363 U.S. at 596, 80 S.Ct. at 1360.

The USPS further argues that Arbitrator Seidman erred in not allowing certain evidence which would have shown conclusively that the reinstatement award should not have been made. It is well settled that courts "should not undertake to review the merits of arbitration awards but should defer to the tribunal chosen by the parties finally to settle their disputes." *Hines v. Anchor Motor Freight*, 424 U.S. 554, 563, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976). Beyond that defendant's argument invites the Court to engage in pure speculation, which it will not do.

The Court in no way seeks to excuse or belittle Mr. Schwartz's admitted offense. This Court, however, does not sit in judgment of Mr. Schwartz; it sits to judge the validity of an award made under a valid collective bargaining agreement which binds the parties. Defendant's appeal to

the public policy exception is a thinly disguised effort to retry the case that it lost in arbitration. Were the Court to read the public policy exception as generously as defendant urges, it "... would make meaningless the provisions that the arbitrator's decision is final...." *Steelworkers Union v. Enterprise Wheel and Car Corp.*, 363 U.S. at 599, 80 S.Ct. at 1362. The Supreme Court and this Circuit, in particular, have emphasized the extreme narrowness of the public policy exception so as not to open the door to wholesale attack on the finality of arbitration awards in contravention of longstanding Federal labor policies. *Supra* at 1528–1529.

The USPS has shown no well-defined and dominant public policy as articulated in laws and legal precedents that requires *vactur* of the award. Defendant's case is constructed on a foundation of "... general considerations of supposed public interests." *Muschany v. United States*, 324 U.S. at 66, 65 S.Ct. at 451. As explained by the *W.R. Grace & Co.* Court, such a foundation is unable to support the weight of authority required to eclipse the arbitration edifice central to Federal labor policies. *W.R. Grace & Co. v. Local Union 759*, 461 U.S. at 766, 103 S.Ct. at 2183.

The Court attaches an order enforcing the arbitration award. Furthermore, the defendants are directed to pay Mr. Schwartz back pay with interest from the time of the award until he is reinstated.

## ORDER

Upon consideration of defendant's motion for summary judgment; plaintiff's opposition thereto and cross-motion for summary judgment; defendant's reply and opposition to plaintiff's motion; plaintiff's reply; the affidavits and exhibits submitted by the parties; and for the reasons set forth in the accompanying opinion, it is by the Court this 15th day of January 1986,

ORDERED that defendant's motion for summary judgment is denied; it is further

ORDERED that plaintiff's motion for summary judgment is granted; it is further

ORDERED that the arbitration award of May 27, 1985, reinstating Mark A. Schwartz be enforced; it is further

ORDERED that defendant pay Mark A. Schwartz back-pay from May 27, 1985, to the date of reinstatement, plus interest at the legal rate; and it is further

ORDERED that this action is dismissed.