**Guy W. KISSINGER,**
**Plaintiff, Appellant,**

v.

**UNITED STATES POSTAL SERVICE,**
**et al., Defendants, Appellees.**

No. 86–1033.

United States Court of Appeals,
First Circuit.

Submitted June 6, 1986.

Decided Sept. 24, 1986.

Albert F. Cullen, Jr., Robert V. Carr and Cullen & Wall, on brief, for plaintiff, appellant.

Evan Slavitt, Asst. U.S. Atty., and William F. Weld, U.S. Atty., on brief, for defendant, appellee United States Postal Service.

Paul F. Kelly, Shelley B. Kroll and Segal, Roitman & Coleman on brief, for defendant, appellee Local No. 301, Mail Handlers Union.

Before CAMPBELL, Chief Judge, COFFIN and BREYER, Circuit Judges.

PER CURIAM.

Guy W. Kissinger, a former employee of the United States Postal Service, alleges that the Service dismissed him without "just cause" in violation of a collective bargaining agreement and that his Union, Local No. 301, National Post Office Mail Handlers, Watchmen, Messengers & Group Leaders Division of the Laborers International Union of North America, AFL–CIO, breached its duty of fair representation in failing to take his grievance to arbitration. The district court, in granting defendants' motion to dismiss for failure to state a claim, held that Kissinger's pleas of guilty to two counts of failure to disclose material facts in required Union reports and one count of willfully concealing and withholding or destroying Union records required to be kept by federal law in themselves constituted "just cause" for his dismissal. We affirm.

## I. *Facts*

Guy Kissinger became a mail handler for the United States Postal Service in 1961. In 1970, he began serving as Secretary-Treasurer of the mail handlers' union local. In December 1981, the local expelled Kissinger after an internal trial on the grounds that he had used Union funds for his own purposes and had reimbursed himself for unauthorized personal expenses.

On January 20, 1983, a federal grand jury indicted Kissinger on four counts. The first count charged him with embezzling roughly $31,000 from the Union, in violation of 29 U.S.C. § 501(c). Two separate counts alleged that Kissinger knowingly failed to report disbursements to himself of more than $22,000 in Union funds, disclosure of which was required by 29 U.S.C. § 431, thus subjecting himself to criminal penalties under 29 U.S.C. § 439(b). The fourth count charged Kissinger with willfully failing to submit expense vouchers for disbursements of more than $26,000 in Union funds. 29 U.S.C. §§ 436, 439(c).

The day after the indictment came down, the Postal Service placed Kissinger on indefinite suspension. On March 16, 1983, the Service notified Kissinger of his removal. At Kissinger's request, the Union grieved both his indefinite suspension and his removal.

On June 27, 1983, Kissinger pleaded guilty to Counts Two, Three, and Four of a superseding indictment alleging violations of 29 U.S.C. §§ 439(b) and (c). On July 12, the government dismissed the embezzlement count. The Court then sentenced Kissinger on the other three counts to one year in prison (all but three months suspended), two years' probation, and a $2,000 fine.

On January 31, 1984, Arbitrator Allan Weisenfeld upheld the Postal Service's indefinite suspension of Kissinger. The Arbitrator held, however, that the Service had "acted precipitously" in dismissing Kissinger before the charges against him were resolved. He therefore ordered the Service to restore Kissinger to indefinite suspension.

On March 21, 1984, the Service sent Kissinger a second Notice of Removal based upon his conviction and imprisonment on the three counts to which he had pleaded guilty and his resulting violation of Postal Service regulations governing employee conduct. Kissinger filed another grievance. After it was denied at the first three steps of the grievance process, the Union declined to take the grievance to arbitration.

Kissinger then filed this suit against both the Service and the Union, alleging that the Service lacked "just cause" for removing him and that the Union breached its duty of fair representation in failing to take his grievance to arbitration. The district court dismissed the complaint for failure to state a claim. Kissinger now appeals.

## II. *Legal Framework*

The necessary elements of Kissinger's case are identical as against the Postal Service and as against the Union. Ordinarily, an employee subject to a collec-

tive-bargaining agreement which establishes a mandatory grievance-arbitration process, such as the agreement here, must exhaust his contractual remedies before bringing an action. The employee may bring his grievance in federal court without exhausting those remedies, however, if he can show that his Union breached its duty of fair representation. *Vaca v. Sipes,* 386 U.S. 171, 185–86, 87 S.Ct. 903, 914–15, 17 L.Ed.2d 842 (1967). A breach of the duty of fair representation, in turn, is established upon a showing that the employee's action is meritorious and that "arbitrary or bad-faith conduct on the part of the Union in processing his grievance" has occurred. *Id.* at 193, 87 S.Ct. at 918. Kissinger can ultimately prevail against either the Service or the Union, then, only by showing both that he was dismissed without just cause and that the Union acted arbitrarily or in bad faith.

Dismissal for failure to state a claim under F.R.C.P. 12(b)(6) is appropriate only where the complaint on its face does not allege facts sufficient to sustain the plaintiff's case. We can affirm the district court here, then, only if Kissinger's allegations leave no doubt either that the Service acted with just cause or that the Union acted in good faith. The district court found on the face of the complaint that Kissinger was dismissed with just cause. We agree. We therefore do not reach the issue of the Union's good faith.

### III. *Analysis*

 The collective bargaining agreement in effect between the Postal Service and the Union at the time of Kissinger's removal barred the discharge of any employee "except for just cause such as, but not limited to, insubordination, pilferage, intoxication (drugs or alcohol), incompetence, failure to perform work as requested, violation of the terms of this Agreement, or failure to observe safety rules and regulations." Agreement Between United States Postal Service and [Union], July 21, 1981 to July 20, 1984, § 16.1. Arbitrators have consistently interpreted this provision as forbidding discharge based upon a criminal conviction unless the criminal acts exhibit a "nexus" with job performance such that, if committed off the job, they "will have an adverse impact on employee or public relations, efficiency, etc., or pose a threat to postal operations, property or personnel." Case No. AC–S–21,846–D (Arbitrator J. Fred Holly, May 9, 1978); *see also* Case No. N1C–1E–D 13387 (Arbitrator Herbert L. Marx, Aug. 19, 1983) (no nexus with conviction of leaving the scene of an accident), Case No. N8C–1E–D 6173 (Arbitrator Edward Levin, July 30, 1980) (insufficient nexus with AFDC fraud under special circumstances), Case No. AC–C–23851–D (Arbitrator Alan Walt, Apr. 25, 1979) (similar). The courts have similarly interpreted parallel provisions in other agreements. *E.g., Local 453, International Union of Electrical Workers v. Otis Elevator Co.,* 314 F.2d 25 (2d Cir.) (upholding arbitration award forbidding discharge for conviction of gambling on employer's premises), *cert. denied,* 373 U.S. 949, 83 S.Ct. 1680, 10 L.Ed.2d 705 (1963).

The crimes to which Kissinger has pleaded guilty bear a sufficient nexus to his job to justify his discharge. 29 U.S.C. § 439(b) imposes criminal penalties upon "[a]ny person who makes a false statement or representation of a material fact, knowing it to be false, or who knowingly fails to disclose a material fact, in any document, report, or other information required under" Subchapter III of the Labor-Management Reporting and Disclosure Act. 29 U.S.C. § 439(c) criminalizes "willfully mak[ing] a false entry in or willfully conceal[ing], withhold[ing], or destroy[ing] any books, records, reports, or statements required to be kept by" Subchapter III. Congress enacted the labor reporting provisions of LMRDA in order to ensure that union officers comply with reasonable fiduciary standards in handling union property in the interests of "[t]he members who are the real owners." S. Rep. No. 187, 86th Cong., 1st Sess., *reprinted in* 1959 U.S. Code Cong. and Ad. News 2318, 2324; *see also United States v. Budzanoski,* 462 F.2d 443, 449–50 (3d Cir.), *cert. denied,* 409 U.S. 949, 93 S.Ct. 271, 34 L.Ed.2d 220 (1972).

Kissinger has therefore pleaded guilty to acts of criminal irresponsibility in handling the property of others.

Responsibility in handling the property of others is, however, precisely what is required of a mail handler. A postal employee, as this Circuit has noted, "represent[s] a branch of the federal government and [is] imbued with the public trust." Moreover,

> ... putting a postal employee in a job removed from stamps and money does not remove his chances of violating the public trust. Any postal position which handles mail is one entrusted with items of importance and value by the public.... If the Postal Service did not have confidence in an employee's trustworthiness it would be, at a minimum, negligent not to keep close watch on him. Such close supervision as might be prudent could well be too costly to be even remotely efficient.

*United States Postal Service v. American Postal Workers Union (Cote)*, 736 F.2d 822, 825 (1st Cir.1984). For this reason, "any act of dishonesty involving the goods or property of another, whether on or off the job," may be a "serious breach of conduct" by a Postal employee. *Yacovone v. Bolger*, 645 F.2d 1028, 1032 (D.C.Cir.), *cert. denied*, 454 U.S. 844, 102 S.Ct. 159, 70 L.Ed.2d 130 (1981). By his guilty pleas, Kissinger has admitted to such acts of dishonesty.

Kissinger's convictions also run counter to the Postal Service's legitimate interest in being able to easily examine the conduct of its employees. Congress required detailed reports of unions in LMRDA in order that "all facts which might bear on a union official's loyalty" might "be explored in the light of known facts and conditions." *United States v. McCarthy*, 422 F.2d 160, 163 (2d Cir.) (*quoting* S. Rep. No. 187, 1959 U.S. Code Cong. and Ad. News at 2355), *cert. dismissed*, 398 U.S. 946, 90 S.Ct. 1864, 26 L.Ed.2d 286 (1970). Because the Postal Service is imbued with the public trust, it has an interest in employing persons who will not obstruct any investigation of their

trustworthiness. Kissinger's guilty pleas constituted an admission that he had concealed his fiduciary activities from investigation. The Postal Service was therefore justified in discharging him. *See also Weston v. Dep't of Housing and Urban Development*, 724 F.2d 943 (Fed.Cir.1983) (upholding dismissal of employee who had refused to cooperate in internal agency investigation of activities far removed in function and place from her present position).

It is also relevant that Kissinger's crimes occurred in his function as a union officer. Kissinger's coworkers are well aware that he has pleaded guilty to a breach of fiduciary duty regarding their property. If he is restored to duty, then, "[o]ther postal employees may feel there is less reason for them to be honest than they believed—the Union could always fix it if they were caught." *Cote*, 736 F.2d at 825. The Postal Service's interest in avoiding this eventuality must be justification for Kissinger's discharge.

Kissinger claims that he cannot be discharged because his crimes did not involve *mens rea*. So stated, his objection clearly lacks merit. Section 439(b) criminalizes only a "knowing" false statement, and § 439(c) reaches only "willful" concealment of records. The courts have consistently interpreted these provisions as requiring at least some culpable mental state. *See United States v. Bath*, 504 F.2d 456, 460 (10th Cir.1974) (knowledge of falsity of statements required under § 439(b)); *United States v. Haggerty*, 419 F.2d 1003, 1008–09 (7th Cir.1969) ("willfulness" under § 439(c) requires "a deliberate purpose to conceal"), *cert. denied*, 397 U.S. 1064, 90 S.Ct. 1502, 25 L.Ed.2d 686 (1970); *United States v. Spingola*, 464 F.2d 909, 911–12 (7th Cir.1972) (impossibility is a defense).

Kissinger is correct that his convictions under §§ 439(b) and (c) do not support any inference of theft or misappropriation of funds. No such inference is necessary, however, to justify his discharge. Kissinger's offense was not, as he attempts to characterize it, a trivial recordkeeping violation. Rather, he was charged with, and

pleaded guilty to, failing to report over $22,000 of disbursements to himself and of failing to submit vouchers for over $26,000 of disbursements to himself. This massive failure to make reports and keep records required by law while in a fiduciary capacity in itself casts a sufficient shadow over a person's trustworthiness to justify the conclusion that he is unqualified for a position implicating the public trust.

This is not to say that any conviction under 29 U.S.C. § 439 would necessarily justify discharge from the Postal Service. We are sensitive to the fact that no public policy obstructs the Postal Service from employing *anyone* who has been convicted of a crime. *Cote,* 736 F.2d at 825–26; *see also Yacovone,* 645 F.2d at 1033. Evaluation of a criminal conviction, however, requires consideration not only of the statute violated but also of the facts of the case. The facts of the crimes to which Kissinger has pleaded guilty compel an inference of serious untrustworthiness. The district court thus correctly found that Kissinger could not establish that his discharge was not for just cause.

*Affirmed.*